UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DOOLEY MACK CONSTRUCTORS, INC.

       Plaintiff,

v.                     Case No.:  8:08-cv-2195-T-33MAP

M&I MARSHALL & ILSLEY BANK,

       Defendant.

_____/

**ORDER**

This matter comes before the Court pursuant to Defendant's Motion for Summary Judgment (Doc. # 40), filed on February 5, 2010. On February 25, 2010, Plaintiff filed its Response in Opposition to Defendant's Motion for Summary judgment. (Doc. # 52). For the reasons that follow, the Motion is due to be granted in part and denied in part.[1]

**I.    Factual Background and Procedural History**

Plaintiff Dooley Mack Constructors, Inc., was the general contractor of a condominium project developed by Redfish Key, LLC. (Doc. # 52 at 1). Defendant M&I Marshall & Ilsley Bank was the lender for Redfish Key. (Id.) In December 2007, Dooley Mack submitted to Redfish its final pay application,

_____

[1] Although the Court had scheduled oral argument for May 28, 2010, the Court was able to rule without the need for oral argument. Oral argument is canceled.

1

which remained unpaid as of late January 2008. (Id. at 2). Redfish had depleted its loan funds and was unable to pay the $279,156.93 balance owed Dooley Mack. (Id. at 2-3).

In early February 2008, M&I agreed that Dooley Mack would be paid $150,000 from the proceeds of the sale of one of the condominiums in the project, Unit 303. (Id. at 5).[2] The agreement was memorialized in an e-mail dated February 6, 2008, from Mont E. McNeal, vice president of commercial real estate for M&I, to William Dooley, counsel for Dooley Mack. (Doc. # 40 at 5). The e-mail also states that the balance due to Dooley Mack would "be paid out of the next closing (estimated to be approx. $150k)." (Id.) Dooley Mack was paid $150,000 from the sale of Unit 303.

The next condominium in the project to be sold, Unit 203, was scheduled to close in April 2008. (Id. at 7). However, on March 29, 2008, M&I assigned its note with Redfish to another lender, SPCP Group. (Id. at 6). Dooley Mack informed SPCP of the February 6, 2008, e-mail, and asked to be paid the remaining amount due from the proceeds of the sale of Unit 203. (Id. at 7). SPCP refused to do so, stating that Dooley

---

[2] The parties agree that the entire proceeds would otherwise have been paid to M&I. (Doc. # 52 at 7; Doc. # 40 at 3).

Mack did not have valid lien rights. (Id. at 8). Dooley Mack had not filed a lien against the Redfish Key project and concedes that by April 2008, its statutory lien rights had expired. (Doc. # 52 at 6).

Here, the parties diverge in their presentation of the facts. Dooley Mack claims that it was asked to provide the Contractor's Final Affidavit and Release of Lien, as well as a termination of the Notice of Commencement for Unit 303 to facilitate the closing of that unit. (Id. at 4). Dooley Mack claims that it would not have agreed to provide the requested documentation unless a "satisfactory agreement was reached to ensure it would be paid in full for its work." (Id. at 2). Dooley Mack asserts that a discussion between Dooley Mack and M&I resulted in an agreement that Dooley Mack would accept partial payment, forego filing a lien, and provide the requested documentation in exchange for M&I's promise that the balance would be paid from the proceeds of the next closing. (Id.). Dooley Mack claims that M&I sold the loan to SPCP without making any provision for this agreement. (Id.).

M&I claims that Redfish wanted to pay Dooley Mack, and all parties discussed and ultimately agreed to use some of the proceeds from Unit 303 to make a partial payment. (Doc. # 40 at 4). M&I argues that payment was not made in exchange for

Dooley Mack's agreement to forego its rights to record a lien, and asserts that the payment came from Redfish not M&I. (Id. at 5). M&I claims that it "left it to the title company to collect the documentation required to establish Dooley Mack's entitlement to payment from Redfish." (Id. at 5).

However, Mr. McNeal acknowledged during his deposition the existence of additional e-mails leading up to his February 6, 2008, e-mail to Mr. Dooley. Initially, the parties discussed paying Dooley Mack $50,000 out of the closing on Unit 303. (Doc. # 54 at 22), an offer Dooley Mack rejected (Id. at 25). Later, Dooley Mack was offered payments of $75,000 out of the proceeds of each of four closings. (Id. at 31). Ultimately, Dooley Mack agreed to a payment of $150,000 out of the closing of Unit 303 and $150,000 out of a future closing. (Id. at 40-41). The e-mails suggest that the basis for these negotiations was the need for Dooley Mack to supply documentation to facilitate the closing of Unit 303, and that the closing benefitted M&I through pay down of the amount it was owed by Redfish (Id. at 22-34).

Dooley Mack sued M&I in state court on November 9, 2008, (Doc. # 2); the case was removed on November 4, 2008. (Doc. # 1). The Complaint alleges that M&I breached an agreement to pay the balance due Dooley Mack (Count I). (Doc. # 2 at ¶ 23).

Alternatively, the Complaint alleges fraudulent inducement (Count II) and promissory estoppel (Count III). (<u>Id.</u> at ¶ 28-31, 35-37). Dooley Mack also seeks the imposition of an equitable lien on proceeds received by M&I from the assignment of the loan to SPCP (Count IV). (<u>Id.</u> at ¶ 39).

M&I filed its Motion for Summary Judgment (Doc. # 40) on February 5, 2010. Dooley Mack filed its Response in Opposition to M&I's motion for Summary Judgment (Doc. # 52) on February 25, 2010. The Motion is ripe for the Court's review.

## II. <u>Standard of Review</u>

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A factual dispute alone is not enough to defeat a properly pled motion for summary judgment; only the existence of a genuine issue of material fact will preclude a grant of summary judgment. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247-48 (1986).

An issue is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. <u>Mize v. Jefferson City Bd. of Educ.</u>, 93 F.3d 739, 742

(11th Cir. 1996)(citing <u>Hairston v. Gainesville Sun Publ'g</u> <u>Co.</u>, 9 F.3d 913, 918 (11th Cir. 1993)). A fact is material if it may affect the outcome of the suit under the governing law. <u>Allen v. Tyson Foods, Inc.</u>, 121 F.3d 642, 646 (11th Cir. 1997). The moving party bears the initial burden of showing the court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial. <u>Hickson Corp. v. N. Crossarm Co., Inc.</u>, 357 F.3d 1256, 1260 (11th Cir. 2004)(citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986)). "When a moving party has discharged its burden, the non-moving party must then 'go beyond the pleadings,' and by its own affidavits, or by 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." <u>Jeffery v. Sarasota White Sox, Inc.</u>, 64 F.3d 590, 593-94 (11th Cir. 1995)(citing <u>Celotex</u>, 477 U.S. at 324).

If there is a conflict between the parties' allegations or evidence, the non-moving party's evidence is presumed to be true and all reasonable inferences must be drawn in the non-moving party's favor. <u>Shotz v. City of Plantation, Fla.</u>, 344 F.3d 1161, 1164 (11th Cir. 2003). If a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine

issue of material fact, the court should not grant summary judgment. _Samples ex rel. Samples v. City of Atlanta_, 846 F.2d 1328, 1330 (11th Cir. 1988)(citing _Augusta Iron & Steel Works, Inc. v. Employers Ins. of Wausau_, 835 F.2d 855, 856 (11th Cir. 1988)). However, if non-movant's response consists of nothing "more than a repetition of his conclusional allegations," summary judgment is not only proper, but required. _Morris v. Ross_, 663 F.2d 1032, 1034 (11th Cir. 1981), _cert._ _denied_, 456 U.S. 1010 (1982).

## III. **Analysis**

Defendant M&I argues that summary judgment is appropriate as to each count of the Complaint: (1) breach of contract, (2) fraud in the inducement, (3) promissory estoppel, and (4) imposition of an equitable lien.

### A. **Breach of Alleged Agreement**

The February 6, 2008, e-mail sent by Mr. McNeal to Mr. Dooley lies at the center of this dispute. As previously noted, this e-mail states that M&I agreed that Dooley Mack be paid $150,000 from the proceeds of the sale of Unit 303, with the remaining balance due to Dooley Mack (approximately $150,000) to be "paid out of the next closing." Two disputed issues surround this e-mail. The first is whether it represents an enforceable contract and, if so, the nature of

the rights and obligations created under that contract.  The second is whether the agreement, if enforceable, depended upon two conditions precedent that were not satisfied.

### 1.  **Nature and Enforceability of the Agreement**

M&I asserts that Dooley Mack is attempting to make M&I a guarantor of the monies owed Dooley Mack under its construction contract with Redfish. (<u>Id.</u> at 11).  M&I asserts that it did not intend to guaranty the Redfish construction debt, and that the February 6, 2008, e-mail does not indicate any such intent. (Doc. # 40 at 12).  Furthermore, M&I argues that the e-mail fails to create an enforceable guaranty because it does not satisfy Florida's general Statute of Frauds, Fla. Stat. § 725.01. (<u>Id.</u>).  Even if Dooley Mack understood it to create a guaranty, there is no valid contract because there was no "meeting of the minds." (<u>Id.</u> at 13).

An oral promise to answer for the debt of another is unenforceable under Florida's general Statute of Frauds. <u>Jim & Slim's Tool Supply, Inc. v. Metro Communities Corp.</u>, 328 So. 2d 213, 215 (Fla. 2d DCA 1976).  However, "if the promise to pay the debt of another is independent and unconditional, and is made for valuable consideration of direct pecuniary value to the promisor," it does not fall within the statute.  <u>Id.</u>

Dooley Mack contends that M&I agreed Dooley Mack would be

paid out of funds otherwise due M&I in exchange for Dooley

Mack's promise to forego insisting upon full payment and

recording a lien. (Doc. # 52 at 11). Dooley Mack notes that

the imposition of a detriment to the promisee constitutes

valid consideration, citing Real Estate World Florida

Commercial, Inc. v. Piemat, Inc., 920 So. 2d 704, 705 (Fla.

4th DCA 2006) in support of this assertion.[3]  Thus, the Court

declines to find, at this juncture, that the agreement is

barred by Florida's general Statute of Frauds.  The Court now

moves to the question of whether the parties reached a meeting

of the minds and, if so, the parties' intent under the

agreement.

"[A] meeting of the minds of the parties . . . is a

prerequisite to the existence of an enforceable contract."

Midtown Realty, Inc. v. Hussain, 712 So. 2d 1249, 1251 (Fla.

3d DCA 1998) (citations omitted).  Whether an agreement has

been reached must be determined "by examining the language of

the document in question and the surrounding circumstances."

Id. at 1251-1252.  However, "[w]here the terms of a written

---

[3] Dooley Mack need not have made this logical leap.  The
court in Jim & Slim's Tool Supply found that forbearance in
filing a claim of lien constitutes independent consideration
sufficient to take a promise to pay the debt of another
outside the Statute of Frauds. 328 So. 2d at 215.

instrument are disputed and reasonably susceptible to more than one construction, an issue of fact is presented as to the parties' intent which cannot be properly resolved by summary judgment." Strama v. Union Fidelity Life Ins. Co., 793 So. 2d 1129, 1132 (Fla. 1st DCA 2001) (citations omitted).

Here, the plain language of the e-mail evinces the parties' agreement that the balance due Dooley Mack be paid from two closings, particularly when considered in the context of prior e-mails suggesting that the parties negotiated these terms. At issue is <u>why</u> M&I agreed to pay Dooley Mack from monies it was otherwise entitled to receive given that M&I states that it did not intend to guaranty the Redfish debt.

Evidence supports Dooley Mack's argument that it agreed to produce documentation necessary to facilitate the closing of Units 303 and a future closing. (Doc. # 54 at 22-27.) The closing of Unit 303 enabled M&I to receive a pay down of a portion of the debt owed to it by Redfish, and Mr. McNeal acknowledged that the receipt of this payment was advantageous to M&I. (<u>Id.</u> at 34). There is a reasonable inference that the agreement encompassed the second closing as well, which would further benefit M&I.

If proven, these facts would support Dooley Mack's argument that M&I promised to pay the debt in exchange for

valuable consideration, creating an enforceable agreement (whether it be described as a guaranty or otherwise). Thus, the Court finds sufficient evidence of an enforceable agreement, and denies the Motion for Summary Judgment as to Count I, for breach of contract.

## 2. **Conditions Precedent**

M&I also contends that even if the e-mail represents an enforceable contract, it hinges upon two conditions precedent: (1) M&I's ownership of the Redfish loan and (2) Dooley Mack's ability to prove that it was entitled to payment. (<u>Id.</u> at 14). M&I argues that neither condition was satisfied.

"A condition precedent is a condition which calls for the performance of an act after a contract is entered into, upon the performance or happening of which its obligation to perform is made to depend." <u>Racing Props., LP v. Baldwin</u>, 885 So. 2d 881 (Fla. 3d DCA 2004). However, "the plain language of the contract is the best evidence of the intent of the parties." <u>Tingley Sys., Inc. v. HealthLink, Inc.</u>, 509 F. Supp. 2d 1209, 1214 (M.D. Fla. 2007), and the February 6, 2008, e-mail makes no mention of any conditions precedent.

Dooley Mack points to the absence of undisputed evidence that the agreement was made contingent upon these conditions. (Doc. # 52 at 13). M&I itself describes these requirements as

11

"implicit." (Doc. # 40 at 5).  Absent any conditional language in the e-mail or other evidence supporting the alleged conditions, the Court declines to find the agreement between the parties depended upon unsatisfied conditions precedent.

## B. **Fraudulent Inducement**

M&I contends that it is entitled to summary judgment as to Count II, for fraudulent inducement, because Dooley Mack cannot support the allegation that false representations were made, or that M&I knew or should have known that its representations were false.  (Doc. # 40 at 14-15).  Furthermore, M&I contends that Dooley Mack failed to plead all of the necessary elements for fraudulent inducement.

To prove fraudulent inducement, a plaintiff must show that "(1) a false statement was made regarding a material fact; (2) the person making the statement knew or should have known it was false; (3) the maker intended that the other party rely on the false statement; and (4) the other party justifiably relied on the statement to its detriment."  White Constr. Co., Inc. v. Martin Marietta Materials, Inc., 633 F. Supp. 2d 1302, 1325-1326 (11th Cir. 2009).  "A claim for fraud in the inducement must be pled with particularity."  Tindall v. Gibbons, 156 F. Supp. 2d 1292, 1298 (M.D. Fla. 2001) (citing Fed. R. Civ. P. 9(b)).  That means the complaint "must

specifically allege sufficient ultimate facts on each element of the claim." Simon v. Celebration Co., 883 So. 2d 826, 832 (Fla. 5th DCA 2004). In particular, the first element "can only be satisfied when the pleading identifies specific facts and states how they were false." Id. at 833.

Here, the Complaint alleges that M&I entered into an agreement with Dooley Mack, that M&I knew its representations were false, that M&I intended that Dooley Mack rely on the false representations, and that Dooley Mack did so rely and thus forewent the recording of a lien. (Doc. # 2 ¶¶ at 27-30). The Complaint does not enumerate any false statements made by M&I. In its Response to M&I's Motion for Summary Judgment, Dooley Mack asks the Court to make reasonable inferences from the available facts that "Mr. McNeal knew, or should have known, that M&I was intent on selling the Redfish loan" prior to striking the agreement with Dooley Mack. (Doc. # 52 at 15 n. 3). However, this statement does not cure the deficiency in the Complaint.

Therefore, the Court grants summary judgment as to Count II, for fraudulent inducement, because Dooley Mack failed to plead this claim with sufficient particularity. The deadline for filing amended pleadings lapsed in May 2009.

###   C.   **Promissory Estoppel**

M&I argues that it is entitled to summary judgment for
Count III, for promissory estoppel, because "M&I never made
the promise that Dooley Mack claimed to reply upon."[4] (Doc. #
40 at 14).

To make a claim for promissory estoppel, a plaintiff must
allege "(1) a representation as to a material fact that is
contrary to a later-asserted position; (2) a reasonable
reliance on that representation; and (3) a change in position
detrimental to the party claiming estoppel caused by the
representation and reliance thereon."  Romo v. Amedex Ins.
Co., 930 So. 2d 643, 650 (Fla. 3d DCA 2006) (quoting FCCI Ins.
Co. v. Cayce's Excavation, Inc., 901 So. 2d 248, 251 (Fla. 2d
DCA 2005)).  A trial court must not grant summary judgment on
a promissory estoppel claim unless the moving party has shown
conclusively that there are no material facts in dispute as to
any of the three elements.[5]  FCCI Ins. Co., 901 So. 2d at 251.

_____

[4] M&I makes the same argument against Dooley Mack's claim
for fraudulent inducement. However, the presence of a promise
is not an element of a fraudulent inducement claim.

[5] The FFCI Ins. Co. court cites Moore v. Morris, 475 So.
2d 666, 668 (Fla. 1985) which states: "If the evidence raises
any issue of material fact, if it is conflicting, if it will
permit different reasonable inferences, or if it tends to
prove the issues, it should be submitted to the jury as a
question of fact to be determined by it."

In Count III of its Complaint, Dooley Mack states that "[o]n February 6, 2008, M&I Bank, entered into the Agreement with Plaintiff" and "Plaintiff reasonably relied on the Agreement and forewent recording of a claim of lien for the amounts due it." (Doc. # 2 at ¶34-35). The "Agreement" refers to the February 6, 2008, e-mail, which states that Dooley Mack will be paid the balance due it out of the next closing. The clear wording of the Complaint and the e-mail suggest that M&I made a promise of future payment. The exact nature of this promise is a material fact in dispute.

Because the evidence raises a disputed issue of material fact as to the first element of promissory estoppel, the Court denies summary judgment as to Count III. The Court need not address the other elements.

D. __Equitable Lien__

M&I claims that it is entitled to summary judgment for Count IV, the imposition of an equitable lien, because Dooley Mack cannot support the allegation that false representations were made, or that M&I knew or should have known that its representations were false. (Doc. # 40 at 15). Furthermore, M&I contends that there is no basis for an equitable remedy because there is no viable underlying claim warranting relief. (Id. at 15).

15

A plaintiff may seek an equitable lien based upon a claim of equitable estoppel or unjust enrichment. Golden v. Woodward, 15 So. 3d 664, 669 (Fla. 1st DCA 2009) (citations omitted). Here, Dooley Mack argues that it is entitled to an equitable lien because M&I was unjustly enriched when it assigned the Redfish loan to SPCP free of the debt owed to Dooley Mack. (Doc. # 2 ¶ 43).

A claim for unjust enrichment includes the following elements: "(1) the plaintiff has conferred a benefit on the defendant; (2) the defendant has knowledge of the benefit; (3) the defendant has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." Golden, 15 So. 3d at 670 (citations omitted). Allegations of false representation are not required for an unjust enrichment claim.[6]

As noted above, evidence suggests that Dooley Mack

_____

[6] M&I cites Wal-Mart Stores, Inc. v. Ewell Indus., Inc., 694 So. 2d 756, 757 (Fla. 1st DCA 1997) to support its argument that evidence of fraud, misrepresentation or other affirmative deception is required to support an equitable lien. However, the cases cited in Wal-Mart Stores involve equitable estoppel not unjust enrichment. See e.g. Rinker Materials Corp. v. Palmer First Natl. Bank & Trust Co., 361 So. 2d 156 (Fla. 1978). Unjust enrichment involves different elements than equitable estoppel.

conferred a benefit on M&I by agreeing to produce documentation necessary to facilitate the closing of Units 303 and a future closing. The closing of Unit 303 enabled M&I to receive a pay down of a portion of the debt owed to it by Redfish, and Mr. McNeal acknowledged that the receipt of this payment was advantageous to M&I. (Doc # 54 at 34 ¶ 3-6). There is a reasonable inference that Dooley Mack had agreed to similarly facilitate the second closing, which would further benefit M&I. In any event, M&I was able to sell the loan free of the debt owed Dooley Mack.

The Court therefore denies summary judgment as to Count IV, for equitable estoppel, because there is a disputed issue of material fact as to whether Dooley Mack conferred a benefit on M&I. Furthermore, the Court finds that viable claims exist upon which Dooley Mack may base a claim warranting relief.

### E. Damages Claim

M&I asserts that summary judgement is appropriate because Dooley Mack cannot show that it was damaged as a result of M&I's actions. In addition, M&I claims that Dooley Mack's damages are too speculative.

#### 1. No Claim of Damages

M&I argues that Dooley Mack fell victim to its own poor business judgment when it neglected to record a lien. (Doc. #

40 at 15). Furthermore, M&I argues that SPCP's foreclosure action against Redfish Key Villas would have extinguished any lien Dooley Mack might have recorded.[7] (Id.).

M&I correctly points out that a trial court may not rewrite a contract to relieve a party from the burden of a bad bargain. Barakat v. Broward County Hous. Auth., 771 So. 2d 1193 (Fla. 4th DCA 2000) (citations omitted); thus, if Dooley Mack's failure to file a lien was merely a bad business decision, it is not within the Court's purview to correct it. However, if Dooley Mack did agree to forego filing a lien in exchange for payment (a fact in dispute), the February 6, 2008, e-mail leaves little doubt as to what Dooley Mack would receive in return – payment of the amount due under the construction contract out the proceeds of two closings. Thus, the question of whether Dooley Mack made a bad decision or indeed was damaged by M&I's actions hinges upon the nature of the agreement.[8]

---

[7] M&I cites no case law in support of this argument but states correctly that Dooley Mack has conceded this point.

[8] Even if Dooley Mack's breach of contract claim fails, Dooley Mack may be able to prove damages under promissory estoppel. M&I states generally that a claim of promissory estoppel must fail "where the plaintiff's detrimental reliance is caused by its own mistake in judgment." (Doc. # 40 at 15). However, the case law cited (Arena Parking, Inc. v. Lon Worth Crow, Ins. Agency, 768 So. 2d 1107 (Fla. 3d DCA 2000)) does

18

Although Dooley Mack acknowledges that SPCP's foreclosure action against Redfish would have extinguished any junior liens, Dooley Mack argues that the damage occurred earlier, when M&I sold the loan to SPCP without providing for payment of the monies due Dooley Mack. (Doc. # 52 at 17). Thus, the Court declines to find that Dooley Mack cannot show that it was damaged as a result of M&I's actions. Dooley Mack has alleged sufficient claims to survive summary judgment, making any damages claim a question for the jury.

### 2. <u>Speculative Damages</u>

Dooley Mack alleges $4,000 in out-of-pocket damages and approximately $125,000 in damages related to amounts due to subcontractors. (Doc. # 40 at 16). M&I argues that the $125,000 damages claim is speculative because Dooley Mack is under no obligation to pay its subcontractors when it is not paid. (<u>Id.</u>)

M&I states that "remote, speculative or contingent damages such as these cannot be recovered, as a matter of law." (<u>Id.</u> at 17). This overstates the law. "When the measures of damages is lost profits, the loss much be proven with a reasonable degree of certainty before it is

_____

not appear to support that point.

recoverable." <u>Shadow Lakes, Inc. v. Cudlipp Constr. & Dev.</u>
<u>Co., Inc.</u>, 658 So. 2d 116, 117 (Fla. 2d DCA 1995).
Uncertainty as to the amount of damages will not preclude
recovery if the party seeking damages can present evidence to
justify a definite amount. <u>Smith v. Austin Dev. Co.</u>, 538 So.
2d 128 (Fla. 2d DCA 1989).

Dooley Mack argues that its agreement with M&I was not
speculative but rather for an amount certain.[9] (Doc. # 52 at
16). That amount was not limited to Dooley Mack's out-of-
pocket expenses. (<u>Id.</u>) Thus, Dooley Mack has established
sufficient certainty for the damages claim to be presented to
a jury.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

Defendant's Motion for Summary Judgment (Doc. # 40) is
**GRANTED in part and DENIED in part** as follows: Defendant is
entitled to Summary Judgment as to Count II of Plaintiff's
Complaint (for fraudulent inducement). Defendant's Motion for

---

[9] A Dooley Mack representative testified (at Depo, Jan.
21, 2010; Doc. # 41-1) that Dooley Mack would not get the best
prices from a preferred subcontractor if the amounts due were
not paid. (Doc. # 40 at 16-17). M&I argues that this belief
is too speculative to form the basis of a damages claim.
Given that the agreement between M&I and Dooley Mack is for an
amount certain, Dooley Mack would not likely be required to
rely upon this argument to support its damages claim.

Summary Judgment is otherwise denied.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this <u>21st</u>

day of May 2010.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies:

All Counsel of Record